## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KIMBERLEY E. STEELE,                    *

    Plaintiff,                          *

    v.                                  *

                                                  CIVIL NO. JKB-19-3628

THE JOHNS HOPKINS
HEALTH SYSTEM CORP., *et al.*,          *

    Defendants.                         *

   *   *   *   *   *   *   *   *   *   *   *   *

### MEMORANDUM

Plaintiff Kimberley E. Steele, M.D., Ph.D., sued The Johns Hopkins University and its School of Medicine, The Johns Hopkins Health System Corporation, and Johns Hopkins Bayview Medical Center, Inc., alleging that the Defendants unlawfully discriminated against her and engaged in other employment-related misconduct. The Complaint pleads eight counts, including Maryland common law counts of breach of contract, tortious interference with contractual and prospective economic relations, and intentional infliction of emotional distress. Defendants have moved to dismiss these three common law counts. (ECF No. 14.) The motion is fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will dismiss without prejudice the breach of contract and intentional infliction of emotional distress claims. The tortious interference claim will be dismissed in part and permitted to proceed in part.

### I.    Background

Plaintiff is an accomplished clinical scientist and bariatric surgeon. (Compl. ¶ 3, ECF No. 1.) From 2005 to 2019, Plaintiff was employed by and affiliated with various "Johns Hopkins"

entities, including The Johns Hopkins University (the "University"), The Johns Hopkins University School of Medicine (the "School of Medicine"), The Johns Hopkins Health System Corporation (the "Health System"), and Johns Hopkins Bayview Medical Center, Inc. ("Bayview"). (*Id.* ¶¶ 4–10, 154.) The Complaint collectively refers to these entities as "Hopkins," and generally treats them as acting jointly and in concert with other "Hopkins" affiliated institutions. (*Id.* ¶ 7.)

Plaintiff alleges that throughout her time at Hopkins, she was consistently subject to unlawful discrimination. The misconduct alleged includes inappropriate comments, the denial of opportunities for advancement, unfair treatment, and retaliation. According to the Complaint, the mistreatment culminated with Defendants' refusal to offer Plaintiff a new employment contract when the term of her existing employment contract expired in 2019. (*Id.* ¶¶ 122–154.) Plaintiff also alleges that since her termination, she has been unable to obtain new employment, as "[t]ime and again, she has had positive inquiries go cold, on information and belief, after contact with Hopkins." (*Id.* ¶ 155.)

The Complaint pleads eight counts—five statutory causes of action and three Maryland common law causes of action. The common law counts are: Count Six, Breach of Contract; Count Seven, Tortious Interference with Contractual and Prospective Economic Advantage; and Count Eight, Intentional Infliction of Emotional Distress. Defendants have Answered the five statutory counts, but have moved to dismiss each of the common law counts pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) Defendants argue that Plaintiff has failed to state a claim for breach of contract, tortious interference, or intentional infliction of emotional distress. Plaintiff filed a response (ECF No. 15) and Defendant a reply (ECF No. 16). Plaintiff then filed a motion for leave to file a surreply, which Defendants opposed. (ECF Nos. 17, 20.)

## II.    *Legal Standards*

"In considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc*., 417 F.3d 418, 420 (4th Cir. 2005).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  *Id*.  (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III.    *Analysis*

Preliminarily, the Court denies Plaintiff's motion for leave to file a surreply.  Although the Court has discretion to permit surreplies under Local Rule 105.2(a), they "are generally disfavored" outside of rare instances in which a movant raises new arguments in a reply brief. *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom. E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015).  Plaintiff's surreply does not identify issues which were raised for the first time on reply or any other unusual circumstances that would justify making an exception to the Local Rules to give Plaintiff the last word.  As such, the motion is denied.

On the substance, the Court will dismiss the breach of contract and intentional infliction of emotional distress claims without prejudice.  The court will also dismiss without prejudice the tortious interference claim to the extent that Plaintiff alleges interreference with relationships with

grantors, collaborators, and potential employers, but allow it to proceed to the extent that Plaintiff

alleges interference with relationships with potential patients.

### A.  Breach of Contract

Plaintiff's breach of contract claim will be dismissed because she has not identified with

sufficient clarity any breached contractual obligations.  Under Maryland law, a complaint asserting

breach of contract "must of necessity allege with certainty and definiteness facts showing a

contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by

defendant."  *RRC Ne., LLC v. BAA Maryland, Inc*., 994 A.2d 430, 440 (Md. 2010) (quoting *Cont'l

Masonry Co., Inc. v. Verdel Constr. Co., Inc*., 369 A.2d 566, 569 (Md. 1977)).  While a plaintiff

is not required to attach the contract at issue to her complaint or to identify the specific contractual

language of the allegedly breached contractual terms, she must clearly allege "the existence of a

contractual obligation owed by the defendant to the plaintiff, and a material breach of that

obligation by the defendant."  *Id*. at 442 (quoting *Taylor v. NationsBank, N.A*., 776 A.2d 645, 651

(Md. 2001)).

The Complaint does not meet this standard.  Count Six itself includes only a conclusory

assertion that "[a] contract or contracts existed between Dr. Steele and Johns Hopkins" and that

the Defendants "have unlawfully breached this contract or contracts."  (Compl. ¶¶ 177–78.)  The

Complaint's "Fact" section, which Count Six incorporates by reference, includes one allegation

directly relating to the breach of any contract.  In Paragraphs 125 and 126, Plaintiff alleges

regarding Defendants' decision to offer Plaintiff a two-year terminal contract in May of 2017:

> The process in which Hopkins engaged in the spring of 2017 was not consistent
> with Hopkins' contractual obligations to Dr. Steele.  If the institution wanted to
> terminate her appointment, she needed to be informed within a certain period of
> time prior to her renewal date.  That did not happen[.] . . . Hopkins *should have
> given Dr. Steele another two-year contract, and only at the end of that contract*

*period* could they provide her with a terminal contract, according to the University rules and bylaws for the treatment of Associate Professors.

(Compl. ¶¶ 125–26) (emphasis in original).

These imprecise assertions regarding Defendants' "obligations," and what they "should have" done within "a certain period of time" are insufficient to state a claim for breach of contract under Maryland law.  Plaintiff fails to allege with the necessary "certainty and definiteness" the contours of the contractual obligations to which she alleges each Defendant agreed, and how each Defendant's conduct breached those obligations.  *See RRC*, 994 A.2d at 442 (holding dismissal appropriate where the plaintiff failed to "allege an explicit or implicit promise by [the defendant] to be [contractually] bound" to a particular obligation); *see also Sojourner-Douglass Coll. v. Middle States Ass'n of Coll. & Sch.*, Civ. No. ELH-15-01926, 2015 WL 5091994, at *44 (D. Md. Aug. 27, 2015) (dismissing because the complaint failed "to allege facts that plausibly show the parties agreed to any particular terms, and/or that the parties intended to be bound by the unidentified terms, and/or that [the defendant] breached a particular one of the unidentified terms").[1]  As such, Plaintiff's breach of contract claim will be dismissed.  However, dismissal will be granted without prejudice, since the record before the Court leaves open the possibility that Plaintiff may well be able to plead a cognizable claim for breach of contract.  *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) ("A dismissal under Rule 12(b)(6) generally is not final or on the merits[,]" and dismissal should be granted with leave to amend unless "it appears

---

[1] Though Plaintiff attempts to expand upon the allegations in the Complaint in her opposition brief (ECF No. 15) by making references to her employment contracts and attaching as an exhibit the Johns Hopkins School of Medicine Faculty Policies and Guidelines Governing Appointments, Promotions, and Professional Activities, "[i]t is well–established that parties cannot amend their complaints through briefing or oral advocacy."  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).  Further, even in her briefing, Plaintiff fails to identify with clarity the contractual promises she alleges each Defendant made and then breached.

to a certainty that plaintiff cannot state a claim.") (quoting 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990)).

### B.  Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotional distress ("IIED") claim will also be dismissed. Under Maryland law, an IIED claimant must establish four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) the conduct must be causally related to the emotional distress; and (4) the emotional distress must be severe. *See Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).  Each of these elements "must be pled and proved with specificity." *Foor v. Juvenile Servs. Admin.*, 552 A.2d 947, 959 (Md. Ct. Spec. App. 1989).  To establish the second element, a plaintiff must allege misconduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 380 A.2d at 614 (citations omitted).  To establish the fourth element, the plaintiff must allege that she suffered distress "so severe that no reasonable [person] could be expected to endure it." *Id.* at 616.

The Complaint specifically identifies a number of acts which Plaintiff argues rise to the necessary level of outrageousness. (Compl. ¶ 186.)  These include Defendants "[t]aking advantage of Dr. Steele's need to take an FMLA-protected leave to care for her son-suffering from a life threatening illness-as a means to further punish and retaliate against her," and "[s]ubjecting Dr. Steele to an ongoing and years-long course of abuse, harassment, discrimination, retaliation, and gaslighting." (*Id.*)  The Complaint also states that as a result of these acts, "Dr. Steele has suffered severe emotional distress, for which she has sought counseling." (*Id.* ¶ 187.)  Undoubtedly, the Complaint alleges serious misconduct, which would cause any reasonable person distress.

However, Plaintiff has not alleged sufficiently egregious conduct or a sufficiently extreme emotional reaction to make out a claim for IIED under Maryland law.  The clear majority of Maryland and District of Maryland decisions to examine the issue have found that, "[a]s inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law."  *Arbabi v. Fred Meyers, Inc*., 205 F. Supp. 2d 462, 466 (D. Md. 2002); *see also Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) ("Particularly in an employment situation, a plaintiff faces insuperable hurdles in attempting to plead a proper claim of intentional infliction of emotional distress."), *aff'd*, 166 F.3d 1208 (4th Cir. 1998).  Courts have found that even "abhorrent" conduct by coworkers and supervisors, such as the regular use of racial slurs, will "not rise to the high level of outrageousness that the Maryland Court of Appeals has required[.]"  *Collier v. Ram Partners, Inc.*, 159 F. Supp. 2d 889, 902 (D. Md. 2001); *see also Wimbush v. Kaiser Found. Health Plan of the Mid Atl. States, Inc*., Civ. No. TDC-14-0525, 2015 WL 2090654, at *9 (D. Md. May 4, 2015) (dismissing IIED claim where Plaintiff alleged her supervisors had denied her request for FMLA leave to care for her minor son, discriminated against her on the basis of race, and unlawfully retaliated against her).[2]  Likewise, courts have generally dismissed IIED claims where the former employee does not "allege any facts suggesting she suffered a severely disabling emotional response to [the defendants'] conduct and does not allege that [the defendants'] conduct impaired her daily functioning."  *Nammack v. Hampstead Pre-*

---

[2] The Court notes that Plaintiff has cited certain cases which Plaintiff argues interpret Maryland law as imposing a lower standard at the motion to dismiss phase—most notably *Russell v. Russel Motor Cars Inc*., 28 F. Supp. 3d 414, 420 (D. Md. 2014).  The Court finds that case distinguishable both on the grounds that the misconduct alleged in that case was of a more overt and egregious character than that alleged here, and that the *pro se* complaint in *Russel* was entitled to particularly liberal construction.  The Court also determines that to the extent *Russel* is incompatible with the cases cited above, those cases are more applicable and persuasive here.

*Owned*, Civ. No. DKC 19-1798, 2020 WL 1033589, at *5 (D. Md. Mar. 3, 2020) (dismissing IIED claim where plaintiff alleged that her supervisor had made sexual advances and physically battered her, because she did not allege a sufficiently extreme reaction).

Measured against this standard, the Complaint does not allege either sufficiently outrageous misconduct or the necessary severely disabling emotional response.  As such, the IIED claim will be dismissed.[3]

### C.   Tortious Interference with Contractual and Prospective Economic Relations

Plaintiff's tortious interference claim will be dismissed in part and allowed to proceed in part.  In Count Seven, Plaintiff alleges that she:

> had economic relationships and prospective economic relationships with potential employers, potential patients, actual and potential funders for her research, and potential collaborators on her research projects [and that the Defendants] maliciously, intentionally, willfully, and without justification interfered with Dr. Steele's economic relations with these potential employers, patients, collaborators, and actual and potential grantors, with the intent to cause harm[.]"

(Compl. ¶¶ 181–82.)  Under Maryland law, "the two general types of tort actions for interference with business relationships are inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract."  *K & K Management, Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989) (quoting *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984)).  The Complaint invokes both causes of action, and the Court will address the sufficiency of Plaintiff's allegations in regard to each species of tortious interference claim and each category of alleged relationship in turn.

---

[3] The Court notes that this holding is in no way intended to minimize the seriousness of workplace discrimination or of Plaintiff's subjective distress.  It is simply a holding that the law restricts IIED to only the most extreme cases and provides other remedies for less extreme instances of unlawful discrimination.

### 1.   Tortious Interference with Actual Funders

In Count Seven, Plaintiff claims that in addition to interfering with her relationships with *potential* employers, patients, funders, and collaborators, Defendants also interfered with her relationships with *actual* funders.  The Court interprets the reference to "actual" funders as stating a claim for tortious interference with an actual existing contract.[4]  "This tort has five elements: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff."  *Fowler v. Printers II, Inc*., 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991).  Additionally, a defendant will not be liable for tortious interference with contract for "interfer[ing] with a contractual or economic relationship to which [it] was a party."  *Blondell v. Littlepage*, 991 A.2d 80, 98 (Md. 2010).

The Complaint fails to establish the elements identified above in connection with any contract with a funder.  The Complaint alleges that Defendants misused grant funds received from the National Institutes of Health ("NIH") and failed to adhere to their own promises to the NIH in relation to those grants.  (Compl. ¶¶ 43–46, 96).  But nowhere does Plaintiff allege that Defendants induced the NIH or any other funder to breach any contract with Plaintiff.  This omission is fatal to her claim of tortious interference with contracts with actual funders.

### 2.   Tortious Interference with Potential Collaborators, Funders, and Employers

The Complaint also fails to allege tortious interference with economic relationships with potential employers, collaborators, or funders.  To prove liability for tortious interference with

---

[4] The correct interpretation of this pleading is disputed in the parties' briefing and the subject of a substantial portion of Plaintiff's proposed surreply.  In light of Plaintiff's assertion that it was her intention to state a claim for tortious interference with contract, the Court construes the Complaint to do so by reading the reference to "actual" funders as a reference to actual existing contracts.

prospective economic relationships, Plaintiff must establish four elements: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269 (Md. 1994) (citing *Willner v. Silverman*, 71 A. 962, 964 (Md. 1909)).  Further, "it is necessary to prove both a tortious intent and improper or wrongful conduct." *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994).  An employer's conduct may satisfy this element if the employer unlawfully retaliates against an employee by discouraging potential employers from hiring her or potential customers from retaining her, but the Plaintiff must allege retaliatory acts.  *See Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 515 (D. Md. 2005) (proof former employer provided a "negative false employment reference" supported tortious interference claim).  Additionally, under Maryland law, "[i]n order to sustain a claim for tortious interference with prospective advantage 'plaintiffs must identify a possible future relationship which is likely to occur, absent the interference, with specificity.'"  *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. 2013) (quoting *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006)).

The Fact section of the Complaint does not provide specific supporting factual allegations regarding any tortious interference with advantageous economic relationships with prospective collaborators and funders.  Regarding employers outside the Hopkins system, Plaintiff does alleges that as she has "sought a new position outside of Johns Hopkins[, t]ime and again, she has had positive inquiries go cold, on information and belief, after contact with Hopkins.  (*Id*. ¶ 155).  However, Plaintiff does not go beyond this vague assertion to allege unlawful communications between Hopkins personnel and specific potential employers.  As such, to the extent Plaintiff seeks

to claim tortious interference with her relationship with potential non-Hopkins employers, she has not done so with the necessary specificity. *See Parker v. Ciena Corp*., Civ. No. WDQ-14-4036, 2016 WL 153035, at *10 (D. Md. Jan. 12, 2016) (dismissing claim that former employer interfered with future employment by providing false information because plaintiff "provide[d] no information about how these communications were made or to whom"), *aff'd*, 787 F. App'x 817 (4th Cir. 2019).[5]

Plaintiff does identify one potential employer within the Hopkins system with the requisite specificity: The Johns Hopkins Hospital Children's Center. The Complaint describes a program that Plaintiff actively worked to develop at The Johns Hopkins Hospital Children's Center and alleges that Defendants prevented that program from coming to fruition as an unlawful act of retaliation. (Compl. ¶¶ 116, 127, 132, 151–52.) However, the Complaint treats The Johns Hopkins Hospital Children's Center not as a third party, but as an arm of the Defendants, framing the alleged misconduct in terms of "Hopkins[] foreclos[ing] Dr. Steele's efforts to remain at the institution in a different role and work environment."[6] (*Id*. ¶ 152.) Based on the allegations as pled by Plaintiff, the tortious interference claim in relation to The Johns Hopkins Hospital Children's Center

---

[5] Plaintiff cites *Bechtel v. St. Joseph Med. Ctr., Inc*., Civ. No. MJG-10-3381, 2012 WL 1476079 (D. Md. Apr. 26, 2012), as an example of a case in which a judge of this District allowed a plaintiff's tortious interference claim to survive a motion to dismiss even though the plaintiff failed to specifically identify any potential employers. However, *Bechtel* was decided before the Maryland Court of Appeals' *Mixter* decision, and *Bechtel* specifically cited the "absence of definitive Maryland authority as to the level of certainty required" as a reason for allowing the tortious interference claim to proceed. *Id*. at *11. In *Mixter*, the Maryland Court of Appeals removed the ambiguity identified by *Bechtel*, and clearly stated that Maryland law does require a plaintiff to "identify a possible future relationship which is likely to occur, absent the interference, with specificity.'" *Mixter*, 81 A.3d at 638.

[6] The relevant paragraph reads in full:
> Hopkins elected not to move forward with the COACH program, after purportedly engaging in a process to evaluate its financial effect. On information and belief, the financial modeling done was skewed so as to provide a seemingly neutral reason not to permit the COACH program to move forward – with Dr. Steele remaining at Hopkins. Hopkins thus foreclosed Dr. Steele's efforts to remain at the institution in a different role and work environment.

(Compl. ¶ 152.) As with the breach of contract claim, Plaintiff's discussion of the relationship between the entities in her briefing cannot be used to amend deficient allegations.

therefore falls before the rule that "the tort of wrongful interference with economic relations will not lie where the defendant is a party to the economic relationship with which the defendant has allegedly interfered." *Kaser v. Fin. Prot. Mktg., Inc*., 831 A.2d 49, 54 (Md. 2003).

### 3.     *Tortious Interference with Potential Patients*

Plaintiff also alleges that Defendants tortiously interfered with prospective economic relationships with potential patients.  The necessary elements of this claim are supported by factual allegations.  In the Fact section, Plaintiff asserts that after she reported discrimination, higher ranking surgeons retaliated by steering prospective patients away from Plaintiff.  Plaintiff specifically alleges that, motivated "by a desire to punish Dr. Steele," Dr. Michael Schweitzer made "false statements regarding her clinical availability" to patients who "specifically sought her care" as a means of unlawfully retaliating against her.  (Compl. ¶¶ 53–59.)  These allegations establish the necessary elements of tortious intent and improper conduct, and they identify a specific and readily ascertainable group of patients with whom plaintiff was prevented from developing economically advantageous doctor-patient relationships.

The Court notes that even granting Plaintiff's allegations regarding Dr. Schweitzer's conduct, Plaintiff may face substantial hurdles in proving this claim.  If, as Defendants assert, it is true that Defendants are a party to all patient relationships, or if Plaintiff cannot show any actual damages associated with the alleged loss of patients, or if Plaintiff cannot prove retaliatory motive, then this claim will likely fail.  However, accepting "as true all well-pleaded allegations and view[ing] the complaint in the light most favorable to the plaintiff," Plaintiff has stated a claim for tortious interference with economic relationships with potential patients.  *Venkatraman*, 417 F.3d at 420.  Accordingly, though Count Seven will be dismissed without prejudice to the extent that it

relates to employers, funders, and collaborators, it will be allowed to proceed with regards to potential patients.

### IV.    *Conclusion*

For the foregoing reasons, an order shall enter (1) granting Defendants' motion to dismiss Counts Six and Eight, without prejudice; and (2) granting in part and denying in part Defendant's motion to dismiss Count Seven, without prejudice.

DATED this __4__th day of August, 2020.

BY THE COURT:

/s/
_____

James K. Bredar
Chief Judge